EZEKIEL DeCAMP ET AL. v. FRANK A. SCOFIELD.

*Assumpsit—Promissory note—Consideration—Executory promise— Evidence.*

1. A promise by a *third* party to pay the balance due on certain promissory notes must be based upon a sufficient consideration, which need not be expressed in the writing, but may be proved by any other legal evidence.

2. The admission of a valuable consideration in an agreement does not deprive the promisor of the right to prove what the consideration actually was.

3. Where the consideration for an agreement sued upon is the executory promise of the plaintiffs, they cannot recover without showing performance on their part.

4. In a suit on an agreement to pay the balance due on certain promissory notes, not exceeding a fixed sum, evidence of the failure of the plaintiffs to endeavor to collect the amount due by suit against the payor, before calling upon the defendant for payment, which oral agreement defendant testified was a part of the consideration for his agreement, is admissible, and does not tend to vary defendant's agreement.

75 MICH. 29.

Error to Clinton. (Smith, J.) Argued April 18, 1889. Decided June 28, 1889.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*Fedewa & Lyon,* for appellant.

*O. L. Spaulding,* for plaintiffs.

CHAMPLIN, J. In the fall of 1883 Potter, Beattie & Co. made four promissory notes, one payable 15, and the others 60, days after date, to the order of J. A. Cooper, aggregating $3,700 in amount.

On the twentieth of October, 1884, defendant executed and delivered to the plaintiffs, under the firm name of De Camp, Upton & Co., the following paper writing, viz. :

"For a valuable consideration, I, this twentieth day of October, 1884, agree to pay De Camp, Upton & Co. all the balance due and unpaid on all notes given by Potter, Beattie & Co. to De Camp, Upton & Co., indorsed by James A. Cooper; and said amount that I agree to pay is not to exceed $1,500 in all.

"*October 20, 1884.*                    FRANK A. SCOFIELD."

This action was brought in assumpsit, counting upon the above agreement, and also the common counts, based upon and confined to the above instrument, which is called a note by plaintiffs' attorney.

Defendant pleaded the general issue, and annexed thereto a notice as follows:

"*Sir:* Please to take notice that the defendant will, on the trial of this cause, insist upon, and give in evidence under the general issue above pleaded, that the note and agreement in writing upon which this action is brought was signed by this defendant and delivered to the said plaintiffs upon the express consideration, agreement, and promise of the said plaintiffs that the said Ezekiel De Camp would and should aid and assist this defendant in purchasing and obtaining the control, management, and ownership of the

property and business in the village of Ovid, in said county, known as the 'Ovid Carriage Works,' formerly owned by one James A. Cooper and this defendant (being the property now owned by the Scofield Buggy Co.), and that they, the said plaintiffs, should and would attempt and endeavor to collect the amount of the notes, so guaranteed by this defendant as in plaintiffs' d claration alleged, from the indorser thereof, the said James A. Cooper, and that they would take the proper legal steps to collect the said notes of said Cooper; that there was no other or different consideration for defendant's promises in said agreement contained upon which this suit is brought; that the said Ezekiel De Camp did not aid and assist this defendant in the purchase of said carriage works, nor in getting the control or management of the same, nor any one else for said plaintiffs; and that the said plaintiffs have not attempted or endeavored to collect the amounts of the said notes indorsed by said James A. Cooper, from him, the said James A. Cooper, and that the said plaintiffs have taken no legal steps whatever to collect said notes from said James A. Cooper."

Upon the trial the plaintiffs proved the Potter, Beattie & Co. notes and indorsement of James A. Cooper, and also read in evidence the above agreement signed by Scofield, and then rested their case. The defendant was introduced as a witness in his own behalf, in reference to the consideration of the agreement, and testified as follows:

"The consideration for the giving of the agreement was that Mr. De Camp was to aid me in getting possession of the factory, the Scofield and Cooper plant; also that he was to take legal proceedings against Mr. Cooper before he asked me for a dollar; and it was also stated that he expected to get out of an order of N. J. Clark to Potter, Beattie & Co. enough to reduce the amount down to about $1,000. He agreed to take legal steps against Cooper to collect the papers against Potter, Beattie & Co. that Mr. Cooper was on,—the papers referred to when I gave the agreement in question.

"I was making arrangements for the purchase of the business from about the first of August, 1884, up to about January 1, 1885, when I got possession. I don't know of anything that De Camp did towards aiding me in getting the business. He has never asked me to pay the amount mentioned in the agreement, but asked me to secure it about the first of last

May. I asked him what he had done towards getting it of Mr. Cooper, and he said that, even if I did secure it, why if he got it out of Cooper he would release it, or, if I paid it, why he would reimburse me if he got it out of Cooper.

"At the time, and before I signed the agreement, he agreed to take steps to get it,—to take legal steps against Cooper before he asked me for it.

### CROSS-EXAMINATION.

"He so agreed with me the first time to take legal proceedings to collect of Cooper about ten days before I signed the paper. On the day that I signed the paper I asked him, also, to have it put in in regard to legal proceedings, and he said his word was good enough. He never asked me to pay the note or agreement, but about the first of last May asked me to secure it. He was to aid me in getting the creditors to assign at a per cent. I offered, and give his influence to me instead of Cooper, who was trying to get the business. He said if he assisted me I must help take care of this indebtedness."

Ezekiel De Camp, one of the plaintiffs, was then placed upon the stand, and testified in his own behalf as follows:

"The arrangement was with Mr. Scofield that I should assist him what I could about getting back in business,—the carriage shop business,—and he was to give me this note for it. In consideration of the giving of this note I was to assist in helping to raise money, so that he could pay off his creditors, and there was not any arrangement about my suing Cooper. I didn't tell Anderson that I was to sue Cooper before I could collect from Scofield. Scofield told me that he thought Anderson knew enough about Cooper's matters, so that not only the $1,500 but the whole of the notes could be collected. He wanted me to see Anderson, and to sue Cooper. I said I would sue Cooper if he would put in the money for it. I had paid good money for poor long enough. Anderson would give no information about Cooper's matters. I asked Scofield to pay this note in a conversation at the bank in April or May before this suit was brought. He said he would pay or secure in a few days."

The plaintiffs also offered testimony tending to prove that Mr. De Camp did render service to defendant in getting back the business.

After the testimony was closed the plaintiffs' attorney moved to strike out the testimony which had reference to the agreement to sue Cooper before collecting from Scofield, as tending to vary the written contract. The court held that the oral agreement, that plaintiffs agreed that they would collect from Cooper before pursuing defendant, would vary the terms of the written agreement, and ordered all the testimony tending to prove such agreement stricken out. This ruling raises the only question in the case.

Every agreement which is valid and binding must be based upon a sufficient consideration. The defendant was not a party to the Potter, Beattie & Co. notes. His undertaking was that of an original promisor to pay the balance due and unpaid on the notes, not exceeding $1,500. It therefore required a consideration. It was not necessary that it should be expressed in the writing, but it could be proved by any other legal evidence.

The defendant admitted a valuable consideration for the promise in the writing, but this did not deprive him of the right to prove what the consideration actually was. He set up in his notice that such consideration was the executory promise of the plaintiffs, and he had the right to prove it upon the trial, and, if there was a total or partial failure to perform on the part of the plaintiffs, he could show it as affecting the plaintiffs' right of recovery.

Where the consideration for defendant's promise is the executory promise of the plaintiffs, they cannot recover without showing performance on their part.

That portion of the plaintiffs' promise which related to first taking steps to collect of Cooper no more varied the written agreement than the other portion of the promise which is admitted by DeCamp, that he should assist Scofield what he could in getting back in business. Neither varied the terms of the written agreement, but is consistent with it.

What is meant by the expression that he will pay "all the balance due and unpaid on all. the notes," if it does not refer to the balance due and unpaid after an effort to collect the notes? Without other explanation it affords an inference, at least, of an understanding such as was testified to by defendant.

The plaintiff De Camp denied the agreement testified to by Scofield upon the subject of first trying to get pay from Cooper before calling upon him. This issue of fact should have been submitted to the jury.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.